UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FREDRIC A. HAYES,
CYNTHIA HAYES,

                Plaintiffs,

-vs-                                            Case No.  6:08-cv-180-Orl-19KRS

MARRIOTT OWNERSHIP RESORTS, INC.,
d/b/a Grand Residences by Marriott,
d/b/a Bay Point Residences Condominiums,

                Defendant.
_____

## ORDER

This case comes before the Court on the following:

1.      Motion of Defendant to Dismiss and Memorandum of Law in Support (Doc. No. 11, filed Mar. 5, 2008); and

2.      Response of Plaintiffs to Defendant's Motion to Dismiss (Doc. No. 13, filed Mar. 13, 2008).

### Background

Plaintiffs Frederic A. Hayes and Cynthia Hayes filed this suit against Defendant Marriott Ownership Resorts, Inc. ("Marriott"), asserting twelve causes of action relating to Marriott's alleged failure to construct their condominium as specified by pre-sale promotional materials and other documents.  (Doc. No. 1, filed Feb. 4, 2008.)  Marriott moves for dismissal of all counts.

According to the Complaint, during August of 2005 Plaintiffs reserved a residential condominium unit from Marriott at its Bay Point resort in Panama City, Florida.[1]  (*Id.* ¶¶ 6, 17.)

_____

[1]      Although Panama City, Florida is located in a different judicial district, the purchase contract specifies Orange County, Florida as the forum in which suit must be brought.  (Doc. No.
(continued...)

They signed a formal purchase contract on September 7, 2005.  (*Id.* ¶ 32.)  Before executing the purchase agreement, Marriott provided Plaintiffs with a marketing brochure floor plan stating that the unit's air-conditioned space would total 1,592 square feet.  (*Id.* ¶¶ 21-22.)  Marriott's marketing materials also indicated that the unit would feature a den that has direct access to a second bathroom as well as upgraded features such as "large and numerous windows" and eight-foot high interior doorways.  (*Id.* ¶¶ 15, 44.)

When constructed, however, the condominium was only 1502 square feet, the den had no bathroom access, and the upgrades were missing.  (*Id.* ¶¶ 43, 45, 50, 52.)  In addition, Marriott made one of the bathrooms "an ADA approved handicapped accessible bathroom which utilizes increased floor space, toilet handrails, and wider entrance doors."[2]  (*Id.* ¶ 51.)  Plaintiffs contend that Marriott knew, even before executing the purchase contract, that the unit would not conform to its promotional materials.  (*Id.* ¶¶ 30, 31, 98.)  Plaintiffs refused to close on the unit and now demand a return of their escrow funds. (*Id.* ¶ 55.)

The Complaint asserts the following claims for relief: breach of contract (Count I); negligent misrepresentation (Count II); violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211(2) (2008) (Count III); breach of the implied warranty of merchantability and fitness, Fla. Stat. § 718.203 (Count IV); publication of false and misleading information, in violation of Fla. Stat. § 718.506 (Count V); fraudulent misrepresentation (Count VI); "innocent" misrepresentation (Count VII); fraud in the inducement (Count VIII); fraudulent concealment (Count IX); breach of the implied covenant of good faith, fair dealing, and commercial reasonableness (Count X);

---

[1](...continued)
1-7 ¶ 45.)

[2]        Presumably, Plaintiffs were unhappy with this change. (*See* Doc. No. 1 ¶ 51.)

publication of false and misleading advertising, in violation of Fla. Stat. § 817.41 (Count XI); and rescission (Count XII). Additionally, Plaintiffs seek punitive damages in Counts VIII, IX, and XI, all three of which are fraud-based claims.

## Standard of Review

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from the complaint. *E.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds). The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. Fed. R. Civ. P. 12(d); *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

## Analysis

As a threshold matter, this case bears many similarities to *Huggins v. Marriott Ownership Resorts, Inc.*, No. 6:07-cv-1514-Orl-22KRS, 2008 WL 552590, at *1 (M.D. Fla. Feb. 27, 2008). Specifically, *Huggins* featured the same defendant, same floor plan, similar alleged shortcomings, same counsel on both sides, same twelve causes of action, and very similar arguments for and against dismissal. *See id.* In that case, Judge Conway of this District granted Marriott's motion to dismiss to the extent it sought dismissal of the count asserting the breach of implied covenant of good faith and fair dealing and the plaintiffs' demand for punitive damages. *Id.* at *5. Judge

Conway denied the motion in all other respects.  *Id.*  Where relevant, this Court will consider Judge

Conway's analysis as persuasive authority on the current issues presented.

## I.      Count I (Breach of Contract)

Turning to Count I, Marriott contends that Plaintiffs' Complaint is deficient in four ways.

First, according to Marriott, Plaintiffs allege that Marriott did not construct the condominium unit

with "substantially similar features and square footage" to pre-sale materials but then fail to specify

which features were missing.  (Doc. No. 11 at 8.)  Second, Marriott contends that Plaintiffs "wholly

fail to allege that any such changes were not 'necessary to conform to applicable governmental

requirements, to expedite the completion of construction or for other purposes in Seller's sole

discretion.'"  (*Id.* at 8 (quoting Doc. 1-7 ¶ 6).)  Third, Marriot argues that the purchase contract

provides that "all dimensions, specifications and features shown . . . are approximate and subject to

change without notice."  (*Id.* at 9 (quoting Doc. No. 1-7 ¶ 16(a)).)  Fourth, Marriot contends that the

breach of contract claim fails because: (1) Plaintiffs allege that some of the doors in the unit were

eight-feet high; and (2) the purchase contract does not require Marriott to provide Plaintiffs with

direct access to the second bathroom from the den or to provide non-handicap-accessible bathrooms.

(*Id.*)

These arguments are unpersuasive in two respects.  First, Marriott seeks to have Plaintiffs'

Complaint judged by a standard above what is required by the Federal Rules of Civil Procedure.

The Court's role in resolving a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

is not to nitpick every factual flaw in Plaintiffs' Complaint.  When alleging a breach of contract,

Plaintiffs are measured by the basic standards of Rule 8(a)(2), requiring them only to state a "short

and plain statement of [their] claim showing that [they] are entitled to relief."  Plaintiffs have met

this standard by alleging the existence of a binding agreement, how the agreement was materially breached, and the resulting damages. *See, e.g.*, *Friedman v. N.Y. Life Ins. Co.*, No. 4D07-1744, 2008 WL 2435935, at *1 (Fla. 4th DCA June 18, 2008) ("An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages.")  Factual weaknesses with Plaintiffs' claims will become relevant at trial or on filing of  a motion for summary judgment.

Second, as noted by Plaintiffs, Marriott's arguments in its Motion go well beyond the four corners of the Complaint and attached exhibits.  For instance, the Court cannot determine at this point whether the changes to Plaintiffs' condominium complied with paragraph 16 of the purchase contract.  This analysis will require additional facts that are not presently before the Court.  *See Huggins*, 2008 WL 552590 at *3 ("[T]he issues of whether the unit was constructed 'substantially in accordance with the plans, drawings, and renderings,' and whether the alleged changes 'materially affect[ed] the size . . . of the Unit,' are questions that cannot be resolved at the motion to dismiss stage.").  Accordingly, Marriott's arguments with relation to Count I are without merit.

## II.    Counts II, III, VI, VII, VIII, IX, and XI (Fraud Related Claims)

Marriott moves for dismissal of Plaintiffs' fraud related claims for three reasons.  First, Marriott argues that Plaintiffs fail to meet the pleading requirements of Rule 9(b).  (Doc. No. 11 at 10-12.)  Second, Marriott argues that the claims are barred by the economic loss rule.  (*Id.* at 12-13.)  Third, Marriott argues that the misrepresentation claims are precluded by the purchase contract because it featured a merger clause and other disclamatory language.  (*Id.* at 13-15.)

These arguments are similarly unpersuasive.  Marriott contends that Plaintiffs violate Rule 9(b) by failing to "identify what particular statements were allegedly false or fraudulent, how they

were false, and when the statements were allegedly made or provided to Plaintiffs." (Doc. No. 11 at 11.)   Under the Eleventh Circuit's case law, "the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).  Despite Marriott's contention, however, the Complaint makes all of the required allegations.  Plaintiffs not only explain  what the marketing brochure, contract, floor plans, and other materials say, but they also provided copies of these documents as exhibits. (*See* Doc. No. 1 ¶¶ 8-57; Doc. No. 1-2; Doc. No. 1-4; Doc. No. 1-5.)   Plaintiffs have also explained the way in which they were mislead and how Marriott gained from the fraud.  (*E.g.*, Doc. No. 1 ¶¶ 55, 100.)   Plaintiffs do not provide the exact date and time that Marriott provided the materials to them, nor do they provide the name of the Marriott employee who distributed the materials, but the Court does not read *Brooks* as requiring such an extreme level of specificity.  It is sufficient that Plaintiffs give a reasonably certain range of time in which Marriott distributed its promotional materials to them.   "Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (internal citations and quotation marks omitted), *cited in Brooks*, 116 F.3d at 1381.  Tellingly, Marriott does not point to any particular allegation that is not made with sufficient particularity.  In addition, the Court's own review of the Complaint found no offending allegations, leaving no reason to believe that Marriott does not have sufficient notice of the alleged fraud.  Accordingly, the Complaint complies with Rule 9(b).

Likewise, the fraud counts do not violate the "economic loss doctrine." Defendants argue that, in this case, the alleged fraud relates to the performance of a contract, and the parties are therefore limited to their contractual remedies. (Doc. No. 11 at 12 (citing *Allen v. Stephan Co.*, 784 So. 2d 456, 457 (Fla. 4th DCA 2000).) However, the Florida Supreme Court has held that the economic loss rule does not apply when the defendant commits a tort independent of its breach of the contract. *PK Ventures, Inc. v. Raymond James & Assocs., Inc.*, 690 So. 2d 1296, 1297 (Fla. 1997); *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996). Thus, the Court rejects this argument for exactly the reasons stated in Judge Conway's opinion. *Huggins*, 2008 WL 552590 at *3 ("The Supreme Court of Florida has made clear that the economic loss rule does not bar a claim of negligent misrepresentation . . . . [and] [t]he same rule applies to a fraudulent inducement claim." (citations omitted)).

Marriott's third argument is also unpersuasive. Marriott relies on the following contractual disclaimers in arguing that Plaintiffs' reliance was unreasonable: (1) "all dimensions, specifications, and features as shown in any floor plan are approximate and subject to change without notice" (Doc. No. 1-7 ¶ 16(a)); (2) "dimensions shown on the floor plans are architectural dimensions and may vary due to construction requirements or inaccuracies in the field" (Doc. No. 1-5 ¶ 1.2);[3] and (3) an integration clause (Doc. No. 1-7 ¶ 37).

Although Plaintiffs do not address the language of the purchase contract, dismissal on this ground would again be inappropriate by requiring the Court to analyze matters outside of the four corners of the Complaint. The presence of an integration clause and other disclaimers in the

---

[3] This language actually appears in Plaintiffs' reservation agreement, a document that preceded the purchase contract. (*See* Doc. No. 1-5.)

purchase contract logically militates against the reasonableness of Plaintiffs' reliance on representations made outside of the contract.   But it does not follow as a matter of a law that Plaintiffs' claims fail.   Despite Marriott's contentions, none of its cited cases have held that it is always unreasonable to rely on representations made outside of an executed contract.   In each of these cases, the contract at issue either expressly contradicted the alleged misrepresentation or other facts in the record made the misrepresentation unreliable.   *See F.D.I.C. v. High Tech Med. Sys. Inc.*, 574 So. 2d 1121, 1123 (Fla. 4th DCA 1991) (noting, for purposes of reviewing the lower court's grant of summary judgment, that the plaintiff conceded that "reliance cannot be based on reports submitted after the loan closing, all of which contained the same disclaimer as in the earlier report"); *Hazara Enter., Inc. v. Motiva Enters., LLC*, 126 F. Supp. 2d 1365, 1374 (S.D. Fla. 2000) (applying the parol evidence rule at the summary judgment stage to exclude extraneous representations where the contract was "clear, unambiguous and fully integrated"); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999) (finding that the clear and unambiguous language of the Agreement itself specifically contradicted the alleged misstatements); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005) (finding, on appeal of judgment in favor of the defendant following a jury trial, that a contract precluded a fraud claim where the contract expressly negated reliance on the statements); *Smith v. Mellon Bank*, 957 F.2d 856, 857 (11th Cir. 1992) (affirming a directed verdict in favor of the defendant for a claim under a false advertising statute where the consumer unreasonably relied on a terse, eight-word sentence to assume that the product would conform to certain expectations).

Unlike Marriott's cited cases, the purchase contract at issue does not expressly contradict the alleged misrepresentations.   While paragraph 37 of the agreement provides that the contract

represents the complete and entire understanding between the parties, it also provides that outside representations may be binding if "specifically set forth in this Contract."  (Doc. No. 1-7 ¶ 37.) Referring to the "Completion of Construction," paragraph 16 of the purchase contract requires that the unit be completed in a manner that is "substantially in accordance with the plans, drawings, and renderings as previously viewed and examined by Purchaser."  (*Id.* ¶ 16.)  Marriott's arguments completely ignore this contractual language.  Furthermore, there are no other facts in the Complaint or attached exhibits that would render Plaintiffs' reliance on Marriott's alleged representations unreasonable as a matter of law.  Accordingly, the Court rejects Marriott's grounds for dismissing Counts II, III, VI, VII, VIII, IX, and XI.

## III.    Count IV (Breach of Implied Warranty)

Marriott next argues that Plaintiffs fail to adequately plead breach of the implied warranty of fitness and merchantability.  (Doc. No. 11 at 15.)  However, Marriott misstates Florida law by arguing that section 718.203 of the Florida Statutes only establishes a warranty of habitability. Absolutely nothing in the statute expresses the legislature's intent to impose such a limitation.  The one decision Marriott cites in support of its argument related to the trial judge's specific findings that a particular unit was not fit to be inhabited, and to the extent the case limits the application of section 718.203 to such instances, it appears to be inconsistent with other appellate court decisions and the language of the statute itself.  *Compare Putnam v. Roudebush*, 352 So. 2d 908, 910 (Fla. 2d DCA 1977), *with* Fla. Stat § 718.203(a) (establishing an "implied warranty of fitness and merchantability" and using no language that limits the warranty to habitability), *Biscayne Roofing Co. v. Palmetto Fairway Condo. Ass'n, Inc.*, 418 So. 2d 1109, 1110 (Fla. 3d DCA 1982) (violation of an implied warranty through the subcontractor's unauthorized substitution of roof materials), *and*

*David v. B&J Holding Corp.*, 349 So. 2d 676, 678 (Fla. 4th DCA 1977) (violation of an implied warranty through the developer's failure to construct units in accordance with agreed-upon specifications).  Plaintiffs have alleged several ways in which the completed unit differs from the alleged understanding between the parties.  Under the language of the statute and relevant case law, these allegations appear to be sufficient to state a claim upon which relief can be granted. Accordingly, the Court rejects this ground for dismissal.[4]

## IV.   **Count X (Implied Covenant of Good Faith and Fair Dealing)**

Marriott argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is not based on any express term of the contract not already encompassed by Plaintiffs' breach of contract claim.  Under Florida law, a claim for the violation of the implied covenant of good faith and fair dealing must be premised on an express term in the contract.  *E.g.*, *Munnings v. Fedex Ground Package Sys., Inc.*, No. 6:07-cv-282-Orl-19KRS, 2008 WL 1849003, at *26 (M.D. Fla. Apr. 22, 2008) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316-18 (11th Cir.1999)); *Dennis v. N.W. Mut. Life Ins. Co.*, No. 3:06-cv-43-J-20MCR, 2006 WL 1000308, at *5-6 (M.D. Fla. Apr. 14, 2006).  Furthermore, a plaintiff "must assert allegations different than those underlying the accompanying breach of contract claim." *Dennis*, 2006 WL 1000308 at *5-6.  Judge Conway agreed with Marriott's argument on this point, and the Court similarly agrees here.  *See Huggins*, 2008 WL 552590 at *3.  The only difference between Plaintiffs' implied covenant of good faith and fair dealing claim and breach of contract claim is an allegation

---

[4]        The Court expresses no opinion at this point whether the warranty implied by section 718.203, when applied to a "luxury" condominium unit, requires the unit to meet "luxury" standards. The statute itself does not define "merchantability" or "fitness." *See* Fla. Stat. §§ 718.103, 718.203; *cf. id.* § 672.314 (defining "merchantable" in part as "fit for the ordinary purposes for which such goods are used" in Florida's version of the Uniform Commercial Code).

that Marriott violated the implied covenant by failing to notify Plaintiffs of changes to their unit. (*See* Doc. No. 1 ¶ 127.)  However, Plaintiffs have not pointed to any express provision in the contract requiring such notification.[5]  Accordingly, dismissal of their claim is appropriate.

## V.      Plaintiffs' Request for Rescission

Finally, Marriott argues that Plaintiffs' rescission claim fails as a matter of law because they must show that they have no adequate remedy at law and do not adequately plead fraud or misrepresentation. (Doc. No. 11 at 17-18.)  Plaintiffs argue that the rescission claim is appropriate because they are permitted to plead alternative theories of recovery.  (Doc. No. 13 at 15.)

Plaintiffs are correct.  The fact that Plaintiffs have pled causes of action seeking remedies at law does not preclude them from also seeking an equitable remedy.  Litigants in federal court are permitted to plead alternative theories of recovery. Fed. R. Civ. P. 8(d)(2).  Marriot's second ground for dismissal of Plaintiffs' rescission claim, that Plaintiffs fail to plead any sort of fraud or misrepresentation, is rejected for the reasons stated above.  *See supra* part II.

## VI.     Plaintiffs' Request for Punitive Damages

Lastly, Marriott argues that Plaintiffs' request for punitive damages is foreclosed by the express terms of the purchase contract.[6]  (Doc. No. 11 at 18-19.)  Evaluating this same argument, Judge Conway concluded that Marriott selectively quoted from the contract and ignored language that could allow the purchaser to seek greater remedies where the seller's breach of contract is

---

[5]      Plaintiffs do not actually address the specifics of Marriott's argument, instead relying on the "low threshold" by which pleadings are evaluated at the motion to dismiss stage. (Doc. No. 13 at 14.)  Regardless of the height of the threshold, however, Plaintiffs must actually state a claim upon which relief can be granted.

[6]      Marriott incorrectly states that Plaintiffs seek punitive damages in Counts VI, VII, VIII, and IX.  (Doc. No. 11 at 18.)  Plaintiffs actually seek punitive damages in Counts VIII, IX, and XI.  (*See* Doc. No. 1 ¶¶ 117, 124, 136.)

willful. *Huggins,* 2008 WL 552590 at *4. However, Judge Conway also noted that the plaintiffs entirely failed to address the language of the contract or Marriott's specific arguments regarding punitive damages. *Id.* at *4-5. Because Plaintiffs offered no explanation of why the contractual language should not apply, Judge Conway granted Marriott's request to strike the plaintiffs' demand for punitive damages. *Id.* at *5.

Despite Judge Conway's guidance, Marriott again selectively quoted from the contract, and Plaintiffs offered the exact same conclusory arguments as the Plaintiffs in *Huggins*. Specifically, Plaintiffs claim that an award of punitive damages is justified by Marriott's "intentional[,] malicious conduct" without addressing the relevant contractual provision. (Doc. No. 13 at 15.) As a result, the Court similarly finds that Plaintiffs' punitive damages claims should be stricken. The language of paragraph 21 unequivocally disclaims the availability of punitive damages for claims arising from "any representation, warranty or covenant of Seller . . . ." (Doc. No. 1-7 ¶ 21.) As discussed above, all of Plaintiffs' fraud-based claims are premised on representations by Marriott.

Judge Conway noted that the very next sentence in the document states, "Notwithstanding the foregoing, in the event of the willful nonperformance by Seller under this Contract, Purchaser's remedy shall not be limited to a return of Purchaser's Deposit or return of Purchaser's Deposit plus interest accrued thereon." (Doc. No. 1-7 ¶ 21.) While all facts must be construed in favor of Plaintiffs, it is not the Court's role to make arguments on Plaintiffs' behalf. Plaintiffs have offered no argument in opposition to Marriott's claim that paragraph 21 forecloses the availability of punitive damages. The Court therefore assumes that Plaintiffs do not rely on the contractual language and have instead taken the position that malicious behavior is subject to punitive damages irrespective of any controlling agreement between the parties. This position is contrary to Florida

law. *E.g.*, *Stein v. Paradigm Mirsol, LLC*, __ F. Supp. 2d __, No. 2:07-cv-71-FtM-29DNF, 2008 U.S. Dist. LEXIS 9073, at *17 (M.D. Fla. Feb. 7, 2008);[7] *Ament v. One Las Olas, Ltd.*, 898 So. 2d 147, 150 (Fla. 4th DCA 2005) (damage waivers in real estate purchase contracts are enforceable and controlling between the parties). Accordingly, the Court grants Marriott's request to strike Plaintiffs' demand for punitive damages.

### Conclusion

Based on the foregoing, the Motion of Defendant to Dismiss and Memorandum of Law in Support (Doc. No. 11, filed Mar. 5, 2008) is **GRANTED in part** and **DENIED in part** as follows:

1. Count X of the Complaint is **DISMISSED without prejudice**;

2. The demands for punitive damages in the Complaint are **STRICKEN without prejudice**;

3. The Motion is **DENIED** in all other respects.

Plaintiffs have leave to file an Amended Complaint within **ten (10) days** from the date of this Order. If Plaintiffs do not file an Amended Complaint within this time, the case will proceed on the original Complaint in conformance with this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on July 17, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[7] This case was recently selected for publication in the Federal Supplement but is not yet paginated on the available electronic databases for that publication. The Westlaw version of the case contains no pagination whatsoever, while the LEXIS version is paginated as an unpublished opinion.

Copies furnished to:

Counsel of Record